**EXHIBIT 4**

OKLAHOMA
State Department
of Health

July 27, 2023

**Via U.S. Mail and Email: ASH@hhs.gov**
Rachel L. Levine, M.D.
Office of the Assistant Secretary for Health
200 Independence Avenue, SW
Room 716G
Washington, D.C. 20201

Re: Appeal of Termination of Award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"

## APPEAL OF TERMINATION OF AWARD FPHPA006507

### Adverse Determination

On May 25, 2023, HHS sent a letter to the Oklahoma State Department of Health (OSDH) explaining HHS's position that OSDH was in violation of Title X and out of compliance with the terms and conditions of award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project" ("Award"). HHS explained OSDH was in violation of 42 C.F.R. §59.5(a)(5)(i)(c)—specifically, by no longer offering pregnant clients the opportunity to be provided information and counseling about pregnancy termination.

The Award was suspended as of the May 25, 2023, with a provision stating the action would be reviewed in thirty (30) days to "reassess OSDH's compliance with the award terms and conditions." Subsequently, on June 27, 2023, OSDH received notice the Award would be terminated. (See Exhibit A, Notice of Termination).

### Governing Law

This appeal from HHS's termination of award is governed by 42 C.F.R. §§50.401-50.406. The appeal provisions apply to the Office of Public Health and Science, which the OPA is a part



of.[1] Termination of a grant for purported failure of grantee to operate in accordance with applicable law is specifically enumerated as a dispute covered by these procedures.[2] A complaint must be initiated within thirty (30) days of receipt of the written notification of the determination.[3] The request for review must: include a copy of the adverse determination; identify the issue in dispute; and contain a full statement of the grantee's position.[4]

## STATEMENT OF THE ISSUES

Since 1971, the Oklahoma State Department of Health (hereinafter "OSDH") has continuously received federal grant funds to provide family planning services across the State of Oklahoma. Through those funds as well as access to 340B priced pharmaceuticals and medical devices, OSDH has provided family planning services in 68 counties, while also contracting with Oklahoma City-County Health Department and Tulsa County Health Department, both independent of OSDH, to ensure family planning services are available in Oklahoma's two most populous counties. Because of both OSDH's statewide presence and receipt of the at-issue grant funds, OSDH has been able to provide safe and local access to family planning services for tens of thousands of Oklahomans. This is important to note, because the actions and conclusions of late are not exclusively ideological or political in nature, but carry life-altering consequences by limiting that historically successful and available access.

On June 24, 2022, the United States Supreme Court overruled *Roe v. Wade,* 410 U.S. 113, 93, S.Ct. 705 and *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 112 S. Ct. 2791, (1992), holding that the Constitution does not confer a right to abortion. *Dobbs v. Jackson*

---

[1] 42 C.F.R. §50.402
[2] 42 C.F.R. §50.404(a)(1)
[3] 42 C.F.R. §50.406(a)
[4] 42 C.F.R. §50.406(b)


OKLAHOMA
State Department
of Health

*Women's Health Organization Et. Al.*[5] Up until that decision, 21 O.S. § 861 was unconstitutional only because of the United States Supreme Court decisions in *Roe* and *Casey*. On April 29, 2022, S.B. 1555 was signed into law by Oklahoma Governor, Kevin Stitt, allowing the Oklahoma Attorney General to certify that *Roe* and *Casey* have been overruled so that Oklahoma may enforce 21 O.S. § 861 and other legislation prohibiting abortion. The Oklahoma Attorney general "appropriately" made this certification the same day as the *Dobbs* opinion- June 24, 2022. *Oklahoma Call For Reproductive Justice v. Drummond*, 2023 OK 24, P 14, 526 P.3d 1123. Title 21 O.S. 861 is currently good law in Oklahoma and provides:

> Every person who administers to any woman, or who prescribes for any woman, **or advises** or procures any woman to take any medicine, drug or substance, or uses or employs any instrument, or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life shall be guilty of a felony punishable by imprisonment in the State Penitentiary for not less than two (2) years nor more than five (5) years.

OSDH was found to be in noncompliance with 42 C.F.R. §59.5(a)(5)(i)(c), which states a project must:

> (i) Offer pregnant clients the opportunity to be provided information and counseling regarding each of the following options:
> (A) Prenatal care and delivery;
> (B) Infant care, foster care, or adoption; and
> (C) Pregnancy termination.

The definition of counseling is "to give advice to someone."[6] As such, this rule is directly in conflict with the Oklahoma criminal statute 12 O.S. § 861 and prohibits OSDH from being in

[5] *Dobbs v. Jackson Women's Health Org.*, 213 L. Ed. 2d 545, 142 S. Ct. 2228 (2022)
[6] *Merriam-Webster*. Available at: https://www.merriam-webster.com/dictionary/counsel (Accessed: 27 July 2023).

compliance with the arbitrary HHS rule without risking criminal conduct. Title 12 O.S. § 861 is not an unconstitutional law under guidance from the U.S. Supreme Court and a recent holding by the Oklahoma Supreme Court[7]. Therefore, Oklahoma and its citizens are being deprived of Title X funds for family planning service because of the condition HHS has placed into rule requiring counseling and/or advising on abortion.

Simply, this result was not the intent of 42 U.S.C. § 300 *et seq*., and the condition requiring recipients to counsel on abortion services is contrary to law and exceeds statutory authority. Congress has passed specific legislation intended to prevent the denial or termination of awards based on the very type of conduct HHS is requiring Oklahoma to promote and engage in. The rule requiring counseling on termination of pregnancy has changed three (3) times in the last five (5) years in a manner that appears based on the political party in power; providing more evidence this requirement is more politically relevant than aimed at meeting the purpose of the enabling law. Finally, terminating a grantee's Title X funding solely on the failure to counsel on abortion is a condition that is in violation of U.S. Supreme Court case law.

**LEGAL ARGUMENT**

It is "axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). When it comes to spending, Congress alone is given the "power of the purse," and the executive branch does not have unilateral authority to impose conditions on federal funding or to "decline to follow a statutory mandate or prohibition simply because of policy objections."

---

[7] In *Oklahoma Call For Reproductive Justice v. Drummond, the Oklahoma Supreme Court held that 21 O.S. § 861 does not violate* the Oklahoma Constitution as it allows the termination of a pregnancy in order to preserve the life of the pregnant woman. 2023 OK 24, P 14, 526 P.3d 1123



*City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018). Further, it is "well settled that an agency may only act within the authority granted to it by statute." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 108 (2d Cir. 2018). *See*, *Gundy v. United States*, 139 S.Ct. 2116, 2121 (2019) ("The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government.") Further, under the APA, agencies cannot make rules that are "arbitrary, capricious, an abuse of discretion, **or otherwise not in accordance with law**" and "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right." *Id.*; See also 5 U.S.C. § 706(2).

Not only does the requirement at issue exceed statutory authority and violate the APA, but it also is an unlawful condition in violation of the U.S. Constitution and the limitations espoused by the United State Supreme Court in *South Dakota v. Dole*, 483 U.S. 203, 107 S. Ct. 2793 (1987). In *Dole,* the Court outlined the limitations on what conditions Congress may attach to the receipt of federal funds: (1) "the exercise of spending must be in pursuit of 'the general welfare;" (2) if Congress wishes to condition the States' receipt of federal funds, it must do so unambiguously allowing "States to exercise their choice knowingly, cognizant of the consequence of their participation;" (3) conditions must be related "to the federal interest in particular national projects or programs;" (4) conditions must not violate other provisions of the Constitution, such as the First Amendment or the Due Process or Takings Clauses of the Fifth Amendment. Finally, the *Dole* court expressed a fifth limitation, stating the condition cannot cross the line from enticement to impermissible coercion, such that states have no real choice but to accept the funding and enact or administer a federal regulatory program. *Dole*, 483 U.S. at 207-208, 107 S. Ct. at 2796.



OKLAHOMA
State Department
of Health

**A. HHS' determination to terminate funding based on rule 42 C.F.R. §59.5(a)(5)(i)(c) exceeds statutory authority and is not related to the federal interest expressed in 42 U.S.C. §§ 300 et seq.**

In 1970, Congress enacted Title X of the Public Health Service Act, codified in 42 U.S.C. §§ 300-300a-6A. Under 42 U.S.C. § 300, the Secretary is authorized to make grants and enter into contracts with public or non-profit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). Further, the statute lists factors the Secretary shall take into account in making grants and contracts: "number of patients to be served, the extent to which family planning services are needed locally, the relative need of the applicant, and its capacity to make rapid and effective use of such assistance." 42 U.S.C. § 300(b). None of the factors require counseling on abortion services. In fact, Title X's governing statute, 42 U.S.C. §§300-300a-6, mentions "abortion" only once. "None of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." The legislative history as to why this language was added is clear. The Conference report stated that section was specifically adopted into the Act "to ensure that Title X funds would 'be used <u>only to support preventive family planning services,</u> population research, infertility services, and other related medical, informational, and educational activities." H.R. Conf. Rep. No. 91-1667, 8 (Dec. 3, 1970), 42 U.S.C. 300a-6 (emphasis added).

Further, the author of Title X, Rep. John Dingell (D-MI) clarified the intent of the abortion prohibition:

> With the "prohibition of abortion" amendment—title X, section 1008—the committee members clearly intend that abortion ***is not to be encouraged or***



***promoted in any way through this legislation***. Programs which include abortion as a method of family planning are not eligible for funds allocated through this act.
116 Cong. Rec. 37375 (Nov. 16, 1970) (emphasis added).

The governing regulation rightly acknowledges the statutory provision stating "[e]ach project supported under this part must...[n]ot provide abortion as a method of family planning."[8] Yet, in the same subpart, the regulation promulgated by HHS goes on to state "a project must [o]ffer pregnant clients the opportunity to be provided information and counseling regarding...pregnancy termination."[9] This inclusion is contrary to the expressed intent and spirit of the statute, evidenced by congressional disavowal of abortion as a means of family planning within the meaning of Title X, and is without statutory basis. The purpose of Title X is to provide funding for preventive family planning services, not abortion. Conditioning an award of Title X funding on counseling for abortion is outside of the scope and purpose of Title X.

In *Rust v. Sullivan*, the Court analyzed a challenge to HHS regulations prohibiting recipients of Title X funding from "counseling concerning the use of abortion as a method of family planning or provide referral for abortion as a method of family planning." *Rust v. Sullivan*, 500 U.S. 173, 193–96 (1991). The Court upheld the prohibition because "[t]he Title X program is designed not for prenatal care, but to encourage family planning.... This is not a case of the government 'suppressing a dangerous idea,' but of a prohibition on a project grantee or its employees from engaging in activities ***outside of the project's scope.***" *Rust v. Sullivan*, 500 U.S. 173, 193-194 (1991) (**emphasis** added). In other words, counseling on abortion is outside the scope of Title X. The Court understood Title X's primary intent was pre-pregnancy preventive services, stating "Indeed, if one thing is clear from the legislative history, it is that **Congress**

---

[8] 42 C.F.R. §59.5(a)(5)
[9] 42 C.F.R. §59.5(a)(5)(i)(c)


OKLAHOMA
State Department
of Health

**intended that Title X funds be kept separate and distinct from abortion-related activities. It is undisputed that Title X was intended to provide primarily pre-pregnancy preventive services."** *Id.* at 190 (emphasis added).

However, the condition in rule now is a complete reversal to those requirements analyzed and upheld in *Rust,* as well as the requirements put in place in February 2019 by HHS. Nothing in statute has changed relating to the purpose of the project's scope. The current rule no longer defines the limits of the programs, as they relate to the abortion prohibition in 42 U.S.C. § 300a-6, nor seeks to keep abortion and related activities separated from family planning services. Instead, the rule as applied by HHS now seeks to force recipients to counsel on abortion or lose their funding. The current condition is not related to Title X's expressed purpose and clear legislative history. Further, the condition clearly exceeds statutory authority because Title X's purpose is to provide family planning services. Abortion is unambiguously excluded from the scope of family planning services by 42 U.S.C. § 300a-6, stating no funds "shall be used in programs where abortion is a method of family planning." Such a condition requiring specific counseling as a form of family planning that is specifically excluded by statute, is both arbitrary and unreasonable.

Further, 42 C.F.R. §59.5(a)(5)(i)(c) not only exceeds HHS's statutory authority, but it is also in violation of the Weldon Amendment; further supporting that the requirement to counsel on abortion is wholly unrelated and antitheitcal to the expressed federal interest. The Weldon Amendment states:

> None of the funds made available in this Act may be made available to a Federal agency or program or to a State or local government, if such agency, program, or government subjects an institutional or individual health care entity to



discrimination on the basis that the health care entity does not provide, pay for, or provide coverage of, or *refer* for abortions.[10]

This amendment sets forth clear Congressional intent, in plain language, that states healthcare entities are not penalized for refusing to, *inter alia*, refer for abortions. When Congress's intent is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense council, Inc.*, 467 U.S. 837, 842-843 (1984). Here, the unambiguous intent of Congress is to protect healthcare entities, including State entities such as OSDH, from having their funding denied or terminated for not referring patients for abortions. Referral is defined as "The act or an instance of sending or **directing to another for information, service, consideration, or decision**." Black's Law Dictionary 9th ed. (**emphasis** added).

HHS's termination of Award was due to OSDH's refusal to refer and/or counsel for abortions. This is clearly contrary to the terms of the Weldon Amendment. OSDH is a healthcare entity. The Weldon Amendment defines "health care entity" as "includ[ing] an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization a health insurance plan, or any other kind of health care facility, organization, or plan." 45 C.F.R. § 88.2 The rule specifically recognizes State agencies, such as OSDH, may be health care entities: "As applicable, components of State or local governments may be health care entities under the Weldon Amendment and Patient Protection and Affordable Care Act section 1553."45 C.F.R. § 88.2. OSDH operates sixty-eight (68) county health departments that provide direct patient care to Oklahomans, including providing family planning services

[10] Consolidated Appropriations Act, 2023, Public Law 117-328, Div. H, sec. 507(d) (emphasis added)


OKLAHOMA
State Department
of Health

specifically intended under Title X. By its own terms the grant given recognizes OSDH is a healthcare entity.

*See*, 42 C.F.R. §59.1 ("The regulations of this subpart are applicable to the award of grants under section 1001 of the Public Health Service Act (42 U.S.C. 300) to assist in the establishment and operation of voluntary family planning projects. These projects shall consist of the educational, comprehensive medical, and social services necessary to aid individuals to determine freely the number and spacing of children.") "Comprehensive medical services" by definition stem from "health care facility, organization, or plan."

In addition to being prohibited by statute, HHS's action is in violation of the APA because the condition is "arbitrary, capricious, an abuse of discretion, **or otherwise not in accordance with law**" and "in excess of statutory jurisdiction, authority, or limitation, or short of statutory right."[11] As previously mentioned, the agency action is "otherwise" contrary to law and expressly prohibited by federal conscience protection statutes. 42 C.F.R. §59.5(a)(5)(i)(c), upon which the HHS based its action, is an unlawful regulation in that it is directly contrary to Title X's expressed purpose and the Weldon Amendment—where the Rule purports to require referral for pregnancy termination (i.e., abortion), the Weldon Amendment seeks to protect entities who do not, *inter alia*, refer for abortions. Additionally, abortion is not a proper form of family planning methods under Title X. This is an irreconcilable conflict between administrative regulation and applicable statutory provisions. A "regulation that contravenes a statute is invalid." *United States v. Kahn*, 5 F4th 167, 175 (2d Cir. 2021). This conflict is obliquely recognized in the regulation itself, a

[11] *Id.* (emphasis added)



footnote to the prohibition of providing abortion as a method of family planning states "[p]roviders may separately be covered by federal statutes protecting conscience and/or civil rights."[12]
It is clear Congress has not delegated power to supersede statutes to HHS, or any administrative agency for that matter. HHS acted in excess of its statutory jurisdiction by seeking to render a statute void. In fact, such a purported delegation would itself be unconstitutional. *See*, *Gundy v. United States*, 139 S.Ct. 2116, 2121 (2019) ("The nondelegation doctrine bars Congress from transferring its legislative power to another branch of Government.").

When an agency administers a statute, as HHS administers Title X, it is subjected to a two-level inquiry. First, the question is "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Second, and only if Congress has been "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843-844. Further, when an "agency's interpretation involves an issue of 'deep 'economic and political significance,' it may not be entitled to deference. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018) *(citing King v. Burwell*, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015). Under the *Chevron* two-part inquiry, the rule in question fails both parts of the test. First, Congress has spoken directly on the subject clearly and extensively.[13] Abortion is not a valid form of family planning under Title X and, irrespective of that, providers are not to be penalized for not referring patients for abortions. As discussed, the legislative history on this is also clear. Thus, any possible ambiguity on Congress's intent

[12] 42 C.F.R. §59.5(a)(5) fn. 2
[13] *See e.g.*, Weldon Amendment and 42 U.S.C. §300a-6



regarding Title X and referring for abortion is belied by the legislative history—Title X was not intended to "encourage or promote" abortion in any way. It cannot seriously be contended that requiring referral for abortion services is not a way of promoting or encouraging abortion. However, even if the record from Congress were to be found to be ambiguous, HHS's construction is not a reasonable one. Title X provides HHS may "make grants to public or nonprofit private entities and to enter into contracts with public or private entities and individuals **to assist in developing and making available family planning and population growth information** (including educational materials) to all persons desiring such information (or materials)."[14] HHS is only empowered to promulgate regulations under Title X to implement making grants (or contracts) for this express purpose.[15] Thus the only reasonable scope of implementation is rules and regulations aimed at implementing family planning (from which abortion is statutorily prohibited), and population growth (which abortion is, by definition, excluded from). A rule requiring referral for abortion is therefore not a logical outgrowth, or reasonable interpretation, of Title X.

In practice, the arbitrary nature of this requirement becomes even more apparent. OSDH through community health departments provides family planning services, and the funds received under Title X were almost entirely expended in furtherance of those services. These funds have been and were intended, up to HHS's termination, to provide those family planning services to communities. The funds cannot be used for abortion related services even under the Act. None of the funds are intended to go to abortion, but the entire grant reward can be terminated for not counseling on abortion, subsequently depriving communities of the very funding and access

[14] 42 U.S.C. §300a-3(a)
[15] *See*, 42 U.S.C. §300a-4



needed to family planning services the Act is designed to ensure. Simply, terminating grant funds for failing to counsel on a service the recipient cannot provide by or be associated with by the Act is arbitrary and contrary to the purpose of the Act, depriving communities of funding for the very services the Act seeks to promote.

**A. The condition to counsel for abortion is an unconstitutional condition.**

Courts have reasoned that a condition may be unconstitutional when the condition goes beyond just defining the limits of a program, and instead, forces recipients to adopt "the Government's view on an issue of public concern…." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013). This limitation is based on the following principle:

> For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' Such interference with constitutional rights is impermissible.

*Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d 570 (1972) (citing *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460).

As argued above, the condition requiring counseling on abortion does exceed the limits of the Title X program. This rule usurps the entire intent of Title X by forcing recipients to counsel on abortion, which is a method of encouraging and promoting abortion[16]. In light of the *Dobbs* decision, the condition poses a significant problem, especially for recipients in the State of Oklahoma. Abortion, and advising on abortion, is now illegal in Oklahoma. The condition seeks to require recipients to

[16] With the "prohibition of abortion" amendment—title X, section 1008—the committee members clearly intend that abortion ***is not to be encouraged or promoted in any way through this legislation***. 116 Cong. Rec. 37375 (Nov. 16, 1970) (emphasis added).


OKLAHOMA
State Department
of Health

"pledge allegiance" to HHS's policy of promoting abortion even if it means potential criminal liability for such conduct, which is a condition in violation of the Constitution, including the First Amendment. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013).

The current requirement is not defining the limits of the programs or preventing conduct that undermines the program. In *Rust*, the Court upheld the HHS rule prohibiting a recipient from counseling on abortion because, in part, counseling on abortion was "*outside of the project's scope.*" *Rust v. Sullivan*, 500 U.S. 173, 194 (1991). A requirement for recipients to now counsel on abortion is still outside Title X's scope and terminating a recipient's funds for not conducting activities outside the scope of a project is contrary to law.

Requiring recipients to counsel on abortion is an attempt to expand the purpose of the Title X program to include abortion as a family planning method in contradiction to the very terms of Title X. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220–21, 133 S. Ct. 2321, 2332, 186 L. Ed. 2d 398 (2013) *(quoting Barnette,* 319 U.S., at 642, 63 S.Ct. 1178). Simply, a recipient should not be required to potentially violate criminal law to receive federal funding, especially for an issue outside the scope and purpose of Title X and within the State's lawful authority.

**B. Congress has not unambiguously imposed the condition that recipients must counsel on abortion to receive Title X funds.**

"If Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531,



OKLAHOMA
State Department
of Health

1540, 67 L. Ed. 2d 694 (1981). In enacting Title X, Congress specifically enumerated factors HHS should look at in awarding Title X funds: "number of patients to be served, the extent to which family planning services are needed locally, the relative need of the applicant, and its capacity to make rapid and effective use of such assistance." 42 U.S.C. § 300(b). There is no condition requiring recipients to counsel on abortion services provided in statute. In fact, the only condition related to abortion in statute is that a recipient must not use funds in a program where abortion is used as a family planning method. See 42 U.S.C. § 300a-6.

As argued above, the statutory language specifically prohibits the use of Title X funds for abortion service, and the legislative history reveals the Title X grant funds are intend to go towards pre-pregnancy services, not anything related to abortion. Such a requirement runs afoul of constitutional case law and is not unambiguously expressed by the statute. HHS has acted unilaterally outside the enabling law in promulgating this condition into rule, as well as implementing this condition to terminate Title X funding. The rule requiring counseling on termination of pregnancy has changed three (3) times in the last five years based on the political party in office. Further, as in discussed in *Rust*, there use to be a prohibition against counseling on abortion services. Therefore, it cannot be stated that Congress has unambiguously imposed such a condition on Title X funds because the condition is solely imposed by HHS in excess of its authority and direct opposition of the expressed intent of Congress.

**C. The condition to counsel on termination of pregnancy does not promote the general welfare**

Title 42 U.S.C. §§ 300-300a-6 as codified does promote the general welfare by providing family planning services to citizens; however, the specific condition promulgated into rule by HHS, resulting in OSDH's grant to be terminated, does not promote the general welfare. In



OKLAHOMA
State Department
of Health

evaluating this limitation, the U.S. Supreme Court has stated "[t]he discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment. Nor is the concept of the general welfare static. Needs that were narrow or parochial a century ago may be interwoven in our day with the well-being of the nation. What is critical or urgent changes with the times." *Helvering v. Davis*, 301 U.S. 619, 641, 57 S. Ct. 904, 908–09, 81 L. Ed. 1307 (1937). Congress in its discretion chose to specifically prohibit Title X funds being used in any program that utilizes abortion as a family planning service. Requiring a recipient to counsel on abortion is not in the general welfare and exceeds the statutory authority and intent under which it is derived.

**Conclusion**

The action taken by HHS in terminating the Award to OSDH is contrary to law and in violation of federal conscience protection statutes. Conditioning Title X funds on abortion counseling is outside the scope and expressed intent of Title X. Abortion is excluded as a family planning method under Title X, and Congress was clear the funds were never intended to be used to encourage or support abortion. The rule requires exactly what was prohibited by Title X- the promotion, encouragement and support of abortion. After *Dobbs*, abortion is now illegal in Oklahoma, and recipients should not be required to counsel on something not within the scope of the Title X program, especially if there is a potential for criminal conduct. Simply, the action taken exceeds the authority provided under Title X and violates constitutional protections put into place that prohibit the very type of condition required under 42 C.F.R. §59.5(a)(5)(i)(c). The determination must be set aside, and the grant Award be reinstated.



OKLAHOMA STATE DEPARTMENT OF HEALTH:

Lisa Martinez-Leeper

Lisa Martinez-Leeper
CHIEF ADMINSTRATIVE OFFICER

Prepared By:
Cameron Capps, OBA No. 32742
Deputy Chief General Counsel
Office of the General Counsel
Oklahoma State Department of Health

**Signature:** Lisa Martinez-Leeper
Lisa Martinez-Leeper (Jul 27, 2023 15:06 CDT)

**Email:** lisa.martinez-leeper@health.ok.gov



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

DATE June 27, 2023

To: Jill Nobles-Botkin (jill@health.ok.gov)
Project Director/Principal Investigator

Ms. Bethany J Ledel (bethanyl@health.ok.gov)
Authorized Official

Oklahoma State Health Department
123 Robert S Kerr Ave 0308
Oklahoma City, OK 73102-6406

Re: Termination Notice for award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"

This letter provides notice of my decision to terminate the above identified award under 45 C.F.R. § 75.372. Termination is not final until a Notice of Award has been issued with a revised project period end date indicating the effective date of the termination. You must submit complete close out documentation within 120 days of the new project period end date. Additional guidance is attached (Tab A). Failure to provide a timely and acceptable closeout package may result in a unilateral closeout and report to the Federal Awardee Performance and Integrity Information System (FAPIIS) as a material failure to comply with the terms and conditions of the award.

This termination is based on a failure to comply with the terms and conditions of the award as described below. The termination decision will be reported to the OMB-designated integrity and performance system accessible through SAM (currently FAPIIS). The information will be available in the OMB-designated integrity and performance system for a period of five years from the date of the termination, then archived. Agencies that consider making a Federal award to your organization during that five-year period must consider that information in judging whether organization is qualified to receive the Federal award, when the Federal share of the Federal award is expected to exceed the simplified acquisition threshold over the period of performance.

Your organization may comment on any information the OMB-designated integrity and performance system contains about the non-Federal entity for future consideration by awarding agencies. You may submit comments to the awardee integrity and performance portal accessible

EXHIBIT
tabbies
A

through SAM (currently CPARS). Awarding agencies will consider your comments when determining whether your organization is qualified for a future Federal award.

**Appeal Procedure**

You have an opportunity to object and provide information and documentation challenging the termination action, in accordance with 42 CFR part 50, subpart D. To receive a review of your challenge, you must submit a request for such review to the Assistant Secretary for Health (ASH) no later than 30 days after the written notification of the determination is received. An extension of time may be considered upon a demonstration of good cause for the extension. A request for review must identify the issue(s) in dispute. It must also contain a full statement of your position with respect to such issue(s) and the pertinent facts and reasons in support of your position. In addition to the required written statement, you must provide copies of any documents supporting your claim.

Upon receipt of your request, the ASH will follow the process set forth in 42 CFR part 50, subpart D. Any review committee appointed under § 50.405 will be provided with copies of all relevant background materials (including applications(s), award(s), summary statement(s), and correspondence) and any additional pertinent information available. You will be given an opportunity to provide the review committee with additional statements and documentation not provided in the request for review. This additional submission must be tabbed and organized chronologically and accompanied by an indexed list identifying each document. The additional submission should provide only material that is relevant to the review committee's deliberation of the issues raised. You may be asked by the committee, at its discretion, to discuss the pertinent issues with the committee and to submit such additional information as the committee deems appropriate.

Based on its review, the review committee will prepare a written decision to be signed by the chairperson and each of the other committee members. The review committee will then send the written decision with a transmittal letter to you. If the decision is adverse to your position, you will be advised as to your right to appeal to the Departmental Appeals Board under 45 CFR part 16.

**Compliance Findings**

Our findings with respect to non-compliance with the award terms and conditions.

1.  By accepting the award (Tab A—Notice of Award (NOA), Special Terms and Requirements 2), Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the award "By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree

to perform in accordance with the requirements of the award." (Tab A—NOA Standard Term 1).

2. OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment Management System (PMS). In doing so, OSDH agreed to comply with the 42 CFR Part 59, Subpart A as a condition of the award.

3. The Notice of Funding Opportunity (NOFO) PA-FPH-22-001 for the competition ultimately leading to the issuance of FPHPA006507 to OSDH stated the requirement that recipients must comply with the final rule issued on October 4, 2021 (NOFO, Section B.2.a.2).

4. In the application submitted under PA-FPH-22-001, OSDH certified SF-424B "Assurance-Non-Construction Programs" which includes assurance "18. Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and policies governing this program." (Tab D)

**OPA Determination of Non-Compliance with 42 CFR Part 59, Subpart A**

5. On August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website.

6. On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved.

7. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision.

8. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline.

9. OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

10. On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line.

11. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

   b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

12. In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

13. On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

14. On May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. with the following:

   b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

15. In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

16. OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all

Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (See Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

17. Thus, based upon the documentation provided, OPA determined that OSDH's policy for providing nondirective options counseling and referral the Title X project does not comply with the Title X regulatory requirements.

18. OPA communicated this determination of non-compliance to OSDH and the OASH Chief Grants Management Officer (CGMO) by letter dated May 24, 2023 (Tab C).

**Determination of Non-Compliance with Award Terms and Award Suspension**

19. On May 25, 2023, the CGMO concluded that because OSDH is out of compliance with the Title X regulation, OSDH is also out of compliance with the terms and conditions of award FPHPA006507. The CGMO provided notice of the suspension on that day to OSDH and informed OSDH that as of April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are unallowable (Tab B).

20. On June 22, 2023, during a call to assess the status of OSDH's efforts to come into compliance during the first 30 days of the suspension period, OSDH indicated that it would not be able to comply with the Title X regulation citing state law. OSDH stated it did not intend to relinquish the award.

**Conclusion**

After consideration of the above, I conclude that OSDH remains out of compliance with the Title X regulation. OSDH had ample notification of what is required to maintain compliance with the Title X regulation. OSDH took steps to achieve compliance in order to receive a continuation award and subsequently revised its policy to a non-complaint version.

Furthermore, I conclude that OSDH is unlikely to achieve compliance with the terms and conditions of the award during the current budget period. OSDH's material non-compliance with terms and conditions of the award place the federal interest at risk and it is in the best interest of

the government to terminate award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project".

This decision to terminate will be final and effective with the project period end date on the NOA when it is issued.

Respectfully,

Scott J. Moore -S
2023.06.27 13:44:38 -04'00'

Scott J. Moore, Ph.D., J.D., C.F.E.
Director and Chief Grants Management Officer

CC    Jessica Shields, Grants Management Specialist
       Cynda Hall, OPA Project Officer
       Duane Barlow, OASH Grants Branch Chief
       Amy Margolis, OPA Deputy Director
       Jessica Marcella, Deputy Assistant Secretary for Population Affairs


Attachments
   A. Award Closeout Guidance
   B. Notice(s) of Award (initial and all amendments)
   C. OPA Determination of Non-Compliance with Title X Regulation 42 CFR Part 59, Subpart A
   D. Award Suspension Letter
   E. SF-424B Assurances - Non-Construction Programs



DEPARTMENT OF HEALTH AND HUMAN SERVICES

Office of the Secretary

Office of the Assistant Secretary for Health
Grants and Acquisitions Management Division
Rockville, MD 20852

June 27, 2023

Dear: Ms. Jill Nobles-Botkin

FPHPA006507

Our records indicate that your award is scheduled to end on 06/28/2023. In order to complete closeout procedures for this project in accordance with the Uniform Administrative Requirements regulations, the following information and reports must be submitted to the Office of Grants Management, as indicated below: In accordance with the terms and conditions of your award and 45 CFR §75.381, final reports are due ninety (120) days after the Project Period End date.

When your award expires, you may only use remaining grant funds to liquidate expenses incurred during the performance period. You must liquidate all obligations within 90 days of your award expiration date and withdraw the corresponding cash from the HHS Payment Management System (PMS). If you need to liquidate additional funds after the 90-day liquidation period, you must request an extension from the Grants & Acquisitions Management (GAM). Unless an extension has been approved by GAM, you will be unable to withdraw additional funds from PMS.

As part of the closeout of your award, you are responsible for the timely closeout of any subaward(s) and or contract(s) under the award and the financial settlement of any claims with those entities. You should establish a receipt date for your subrecipients/contractors to submit closeout data, final reports, and final claims that allows you to meet the requirement for submission of final reports.

1. SF-425 – Final Federal Financial Report (FFR) and Federal Cash Transactions Report (FCTR)– You must submit your final FFR via the FFR Reporting Module in PMS. You may find a paper copy of the form and instructions at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html. In order for your final FFR to be approved, the final, cumulative FFR must:
    - Have no un-liquidated obligations,
    - Indicate the exact balance of unobligated funds as reported to the Payment Management System (PMS),
    - Reflect the proper amount of indirect costs applicable to the period based on current rates available at the time of preparation, and

   Your disbursements reported in PMS must match your reported obligations on the FFR. You must withdraw all cash needed for disbursements or return unneeded cash. Failure to reconcile your disbursements and cash drawdowns will delay the closeout of your award

   Also, if your Notice of Award includes a cost-sharing or matching commitment, your final, cumulative FFR must show that you have met that requirement. If you have not met that commitment, you must notify us immediately with a justification and request for budget revision.

2. SF-428 and SF-428-B Tangible Personal Property report and/or Disposition report – A report regarding equipment acquired with project funds with an acquisition cost of $5,000 or more per

unit or residual unused supplies with an aggregate fair market value exceeding $5,000. **A negative report is required.** If there are items to report, the inventory must name items, date of purchase, and cost of each item. Indicate your request for disposition of this equipment in accordance with Subpart D - Post Federal Award Requirements, Property Standards, Equipment, 45 CFR part. 75.320. If disposition by transfer or sale is requested include fair market value; you must provide a final Tangible Personal Property Report on the SF 428-B. Access to form SF-428, with instructions for completing the forms, can be found on the Web at https://www.grants.gov/web/grants/forms/post-award-reporting-forms.html. Submit this report as an attachment in Grant Notes in GrantSolutions.

3. Final Program Progress Report – Your reports must address content required by 45 CFR § 75.342(b)(2). Submit your report as an attachment in Grant Notes in GrantSolutions.

Your annual audit must meet the audit requirements for close out of this project. An audit is required for all entities which expend $750,000 or more of Federal funds in each fiscal year. The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed must be submitted online to the Federal Audit Clearinghouse at http://harvester.census.gov/fac/collect/ddeindex.html.

If any inventions were conceived or first actually reduced to practice under this award, they must be listed on the HHS-568 - Procedures for Submission of Final Invention Statement http://www.hhs.gov/forms/publicuse.html. This form should be submitted as an attachment in Grant Notes in GrantSolutions

If your award is subject to reimbursement payment, you must submit an SF 270, Request for Advance or Reimbursement, for any amounts for which you have not previously requested payment. Submit this form as an attachment in Grant Notes in GrantSolutions

The specified reports must be sent as indicated above. Submission in any other manner or to any other office or official will result in your reports being considered delinquent.

Following receipt of your reports, we will review them and advise you of their acceptability or any need for revision.

Financial records, supporting documents, statistical records, and all records pertinent to this grant shall be retained for a period of three years. The records shall be retained beyond the three-year period if an audit is in process or if any audit findings have not been resolved.

Receipt and acceptance of the requested materials will complete the closeout process, subject to final audit. If you have any questions or require assistance, please contact your assigned Grants Management Specialist (GMS) Jessica Shields at Jessica.Shields@hhs.gov, 240-453-8839 or your Project Officer (PO) Cynda Hall at Cynda.Hall@hhs.gov, 240-453-2850. When emailing, it is best to copy both your GMS and PO.

Sincerely,

**Jessica Shields**
Grants Management Specialist

cc: Cynda Hall Project Officer



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

# Notice of Award

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**1. Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**

JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**

Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

**Federal Agency Information**
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
1 FPHPA006507-01-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
New

**18. Is the Award R&D?**
No

## Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 04/01/2022 **- End Date** 03/31/2023 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $4,500,000.00 |
| 20a. Direct Cost Amount | $8,813,049.00 |
| 20b. Indirect Cost Amount | $264,921.00 |
| 21. Authorized Carryover | $0.00 |
| 22. Offset | $0.00 |
| 23. Total Amount of Federal Funds Obligated this budget period | $0.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $9,077,970.00 |
| **26. Project Period Start Date** 04/01/2022 **- End Date** 03/31/2027 | |
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | Not Available |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

See Remarks (continuation)



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

## Recipient Information

**Recipient Name**

Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**Congressional District of Recipient**
05

**Payment Account Number and Type**
1736017987C4

**Employer Identification Number (EIN)**
736017987

**Data Universal Numbering System (DUNS)**
143673015

**Recipient's Unique Entity Identifier**

**31. Assistance Type**
Project Grant

**32. Type of Award**
Service

**33. Approved Budget**
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| **a. Salaries and Wages** | $4,041,510.00 |
| **b. Fringe Benefits** | $1,970,211.00 |
| **c. Total Personnel Costs** | $6,011,721.00 |
| **d. Equipment** | $0.00 |
| **e. Supplies** | $1,465,816.00 |
| **f. Travel** | $30,183.00 |
| **g. Construction** | $0.00 |
| **h. Other** | $319,914.00 |
| **i. Contractual** | $985,415.00 |
| **j. TOTAL DIRECT COSTS** | $8,813,049.00 |
| **k. INDIRECT COSTS** | $264,921.00 |
| **l. TOTAL APPROVED BUDGET** | $9,077,970.00 |
| **m. Federal Share** | $4,500,000.00 |
| **n. Non-Federal Share** | $4,577,970.00 |

**34. Accounting Classification Codes**

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | $4,500,000.00 | 75-22-0359 |



**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

**Remarks (Continuation)**

This Notice of Award provides funding below the total amount requested in the application for the budget period. OASH is not obligated to make additional Federal Funds available. All award decisions, including the level of funding, are final and you may not appeal. You should re-submit an SF 424A and Budget Narrative justification which includes the total cumulative cost for each cost for the budget reimbursement period based on Personnel, Fringe, Travel, Supplies, Contractual, Other and Indirect cost by object class categories. The budget should be resubmitted for the total awarded amount within 30 days of the start of the budget period on this Notice of Award. Prior approval of the revised budget by the Grants Management Officer is required. Changes in scope proposed as part of the budget revision should be clearly noted and also require Grants Management Officer prior approval.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

**35. Terms And Conditions**

## SPECIAL TERMS AND REQUIREMENTS

1. **Program Income Use.** Program income (fees, premiums, third-party reimbursements which the project may reasonably expect to receive), as well as State, local and other operational funding, will be used to finance the non-federal share of the scope of project as defined in the approved grant application and reflected in the approved budget. Program income and the level projected in the approved budget will be used to further program objectives. Box 28 on this Notice of Award (NoA) indicates **Other**. Program Income may be used to meet the cost sharing or matching requirement of the Federal award. The amount of the Federal award stays the same. Program Income in excess of any amounts specified must be added to the Federal funds awarded. They must be used for the purposes and conditions of this award for the duration of the Project period. 45 C.F.R. § 75.307 (e).

2. **Program Specific Regulation.** In accepting this award, the grantee stipulates that the award and any activities thereunder are subject to all provisions of 42 CFR Part 59, Subpart A.

3. **OPA Program Priorities.** All recipients must comply with the requirements regarding the provision of family planning services that can be found in the statute (Title X of the Public Health Service Act, 42 U.S.C. § 300 et seq.) and the implementing regulations (42 C.F.R. Part 59, Subpart A), and any legislative mandates. In addition, sterilization of clients as part of the Title X program must be consistent with 42 C.F.R. Part 50, Subpart B ("Sterilization of Persons in Federally Assisted Family Planning Projects").

   In addition to the statute, regulations, legislative mandates, and additional program guidance that apply to Title X, OPA establishes program priorities that represent overarching goals for the Title X program. OPA expects recipients to develop and implement plans to address program priorities. The current priorities are: 1) advance health equity through the delivery of Title X services; 2) improve and expand access to Title X services; and 3) deliver Title X services of the highest quality.

4. **Notice of Change in Service Sites.** In order to maintain an accurate record of current Title X service sites, grantees must provide notice to the Office of Population Affairs (OPA) of any deletions, additions, or changes to the name, location, street address and email, services provided on-site, and contact information for Title X grantees and service sites. This database will also be used to verify eligibility for 340B program registration and recertification. You must enter your changes to the Title X database within 30 days from the official approval of the change at https://opa-fpclinicdb.hhs.gov/ This does not replace the prior approval requirement under HHS grants policy for changes in project scope, including clinic closures.

5. **304B Program Participation.** If you or your sub-recipient(s) enrolls in the 340B Program, you must comply with all 340B Program requirements. You may be subject to audit at any time regarding 340B Program compliance. 340B Program requirements are available at https://www.hrsa.gov/opa/program-requirements/index.html.

6. **FPAR reporting.** For each calendar year covered by the project period, you will be required to submit a Family Planning Annual Report (FPAR). The information collection (reporting requirements) and format for this report have been approved by the Office of Management and Budget (OMB) and assigned OMB No. 0990-0479 (Expires 9/30/2024). The FPAR data elements, instrument, and instructions are found on the OPA Web site at http://opa.hhs.gov. You are expected to use the FPAR data to inform your QI/QA activities.

7. **Evaluation Cooperation.** The grantee is expected to participate in OPA research and evaluation activities, if selected, and must agree to follow all evaluation protocols established by OPA or its designee.

8. **Grantee Meetings.** The grantee is encouraged to actively participate in all OPA-supported Title X grantee meetings and grantee conferences. In addition to training and technical assistance available from the Reproductive Health National Training Center and the National Clinical Training Center for Family Planning, OPA is planning to conduct two Title X grantee trainings in 2022 and a Title X grantee conference in 2023.

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

9. **Institutional Review Board (IRB).** Institutional Review Board (IRB) approvals, when required, must be submitted via Grant Solutions Grant Notes within 5 business days of receipt from the IRB. No activities that require IRB approval may take place prior to your receipt of the IRB approval.

10. **Maximizing Access.** In furtherance of maximizing access and best serving individuals in need in the service areas, recipients should make reasonable efforts to avoid duplication of effort in the provision of services across the Title X network. For example, Title X recipients' coverage areas may overlap geographically, but duplication of subrecipient sites could be minimized or avoided to create more opportunities for services.

11. **Prior Approval for Vehicle Purchases**. No mobile health unit(s) or other vehicle(s), even if proposed in the application for this award, may be purchased with award funds without prior written approval from the grant management officer. Requests for approval of such purchases must include a justification with a cost-benefit analysis comparing both purchase and lease options. Such requests must be submitted as a Budget Revision Amendment in Grant Solutions.

## STANDARD TERMS

1. **Compliance with Terms and Conditions.** You must comply with all terms and conditions outlined in the grant award, including grant policy terms and conditions contained in applicable Department of Health and Human Services (HHS) Grant Policy Statements (GPS), (note any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75, and the SF-269 is now the SF-425), and requirements imposed by program statutes and regulations, Executive Orders, and HHS grant administration regulations, as applicable; as well as any requirements or limitations in any applicable appropriations acts. By drawing or otherwise obtaining funds for the award from the grant payment system or office, you accept the terms and conditions of the award and agree to perform in accordance with the requirements of the award. The HHS Grants Policy Statement is available at: http://www.hhs.gov/sites/default/files/grants/grants/policies-regulations/hhsgps107.pdf Uniform Administrative Requirements, Cost Principles, and Audit Requirements for HHS awards are at 45 C.F.R. Part 75.

2. **Grants Management Officer Prior Approval Requirements.** Certain changes to your project or personnel require prior approval from the Grants Management Officer (GMO). (See Part II, HHS Grants Policy Statement (GPS), any references in the GPS to 45 C.F.R. Part 74 or 92 are now replaced by 45 C.F.R. Part 75). All amendment requests requiring prior approval must be signed by the grantee authorizing official and or PI/PD and submitted through the GrantSolutions Amendment Module. Only responses signed by the GMO are considered valid. If you take action on the basis of responses from other officials or individuals, you do so at your own risk. Such responses will not be considered binding by or upon any OASH Office or HHS component. Any other correspondence not relating to a prior approval item should be uploaded to Grant Notes within the GrantSolutions system. Include the Federal grant number and signature of the authorized business official and the project director on all such correspondence.

3. **Salary Limitation (Further Consolidated Appropriations Act, 2022, Div. H, Title II, sec. 202).** "None of the funds appropriated in this title shall be used to pay the salary of an individual, through a grant or other extramural mechanism, at a rate in excess of Executive Level II."

   The Salary Limitation is based upon the Executive Level II of the Federal Executive Pay Scale. Effective January 2022, the Executive Level II salary is $203,700. For the purposes of the salary limitation, the direct salary is exclusive of fringe benefits and indirect costs. An individual's direct salary is not constrained by the legislative provision for a limitation of salary. The rate limitation simply limits the amount that may be awarded and charged to the grant or cooperative agreement. A recipient may pay an individual's salary amount in excess of the salary cap with non-federal funds.

4. **Reporting Subawards and Executive Compensation.**

Page 5

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

A. Reporting of first-tier subawards.

1) Applicability.

Unless you are exempt as provided in paragraph D. of this award term, you must report each action that obligates $30,000 or more in Federal funds that does not include Recovery Act funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111–5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2) Where and when to report.

You must report each obligating action described in paragraph A.1. of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FFRS). For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3) What to report.

You must report the information about each obligating action as specified in the submission instructions posted at http://www.fsrs.gov.

B. Reporting Total Compensation of Recipient Executives.

1) Applicability and what to report.

You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—

a) The total Federal funding authorized to date under this award is $30,000 or more;

b) In the preceding fiscal year, you received—

(1) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

(2) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. §170.320 (and subawards); and

c) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

2) Where and when to report.

You must report executive total compensation described in paragraph B.1. of this award term:

Page 6

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

a) As part of your registration profile in the System for Award Management (SAM).

b) By the end of the month following the month in which this award is made, and annually thereafter.

C. Reporting of Total Compensation of Subrecipient Executives.

1) Applicability and what to report.

Unless you are exempt as provided in paragraph D of this award term, for each first-tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if—

a) In the subrecipient's preceding fiscal year, the subrecipient received—

(1) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 C.F.R. § 170.320 (and subawards); and

(2) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

b) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at the Executive Compensation page of the SEC website.)

2) Where and when to report.

You must report subrecipient executive total compensation described in paragraph C.1. of this award term:

a) To the recipient.

b) By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

D. Exemptions.

If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

1) Subawards, and

2) The total compensation of the five most highly compensated executives of any subrecipient.

E. Definitions.

Page 7

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

For purposes of this award term:

1) "Entity"

This term means all of the following, as defined in 2 C.F.R. Part 25:

a) A Governmental organization, which is a State, local government, or Indian tribe;

b) A foreign public entity;

c) A domestic or foreign nonprofit organization;

d) A domestic or foreign for-profit organization;

e) A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2) "Executive"

This term means officers, managing partners, or any other employees in management positions.

3) "Subaward":

a) This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

b) The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. II .210 of the attachment to OMB Circular A–133, ''Audits of States, Local Governments, and Non-Profit Organizations'').

c) A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4) "Subrecipient"

This term means an entity that:

a) Receives a subaward from you (the recipient) under this award; and

b) Is accountable to you for the use of the Federal funds provided by the subaward.

5) "Total compensation"

This term means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 C.F.R. § 229.402(c)(2)):

a) Salary and bonus.

Page 8



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

b) Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

c) Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives, and are available generally to all salaried employees.

d) Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

e) Above-market earnings on deferred compensation which is not tax-qualified.

f) Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000.

5. **Intellectual Property and Data Rights.**

A. Data. The federal government has the right to: 1) Obtain, reproduce, publish, or otherwise use the data produced under this award; and 2) Authorize others to receive, reproduce, publish, or otherwise use such data for federal purposes.

B. Copyright. The awardee may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under a federal award. The federal government reserves a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for Federal purposes, and to authorize others to do so.

C. Patents and Inventions. The awardee is subject to applicable regulations governing patents and inventions, including government- wide regulations issued by the Department of Commerce at 37 CFR part 401.

6. **Acknowledgement of Federal Grant Support**. When issuing statements, press releases, publications, requests for proposal, bid solicitations and other documents --such as tool-kits, resource guides, websites, and presentations (hereafter "statements")-- describing the projects or programs funded in whole or in part with U.S. Department of Health and Human Services (HHS) federal funds, the recipient must clearly state:

1) the percentage and dollar amount of the total costs of the program or project funded with federal money; and,

2) the percentage and dollar amount of the total costs of the project or program funded by non-governmental sources.

When issuing statements resulting from activities supported by HHS financial assistance, the recipient entity must include an acknowledgement of federal assistance using one of the following or a similar statement.

If the HHS Grant or Cooperative Agreement is NOT funded with other non-governmental sources:

> This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling $XX with 100 percent funded by [PROGRAM OFFICE]/OASH/HHS. The contents are those of the author(s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE]/OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The HHS Grant or Cooperative Agreement IS partially funded with other nongovernmental sources:

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

This [project/publication/program/website, etc.] [is/was] supported by the [full name of the PROGRAM OFFICE] of the U.S. Department of Health and Human Services (HHS) as part of a financial assistance award totaling $XX with XX percentage funded by [PROGRAM OFFICE]/OASH/HHS and $XX amount and XX percentage funded by non-government source(s). The contents are those of the author (s) and do not necessarily represent the official views of, nor an endorsement, by [PROGRAM OFFICE]/OASH/HHS, or the U.S. Government. For more information, please visit [PROGRAM OFFICE website, if available].

The federal award total must reflect total costs (direct and indirect) for all authorized funds (including supplements and carryover) for the total competitive segment up to the time of the public statement.

**Any amendments by the recipient to the acknowledgement statement must be coordinated with the OASH federal project officer and the OASH grants management officer.**

If the recipient plans to issue a press release concerning the outcome of activities supported by this financial assistance, it should notify the OASH federal project officer and the OASH grants management officer in advance to allow for coordination.

7. **Whistleblower Protections.** You are hereby given notice that the 48 C.F.R. § 3.908 (related to the enhancement of contractor employee whistleblower protections), implementing 41 U.S.C. § 4712, as amended (entitled "Enhancement of contractor protection from reprisal for disclosure of certain information") applies to this award.

8. **Reporting of Matters Related to Recipient Integrity and Performance.**

A. General Reporting Requirement

If the total value of your currently active grants, cooperative agreements, and procurement contracts from all Federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient during that period of time must maintain the currency of information reported to the System for Award Management (SAM) that is made available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)) about civil, criminal, or administrative proceedings described in paragraph 2 of this award term and condition. This is a statutory requirement under section 872 of Public Law 110-417, as amended (41 U.S.C. § 2313). As required by section 3010 of Public Law 111-212, all information posted in the designated integrity and performance system on or after April 15, 2011, except past performance reviews required for Federal procurement contracts, will be publicly available.

B. Proceedings About Which You Must Report

Submit the information required about each proceeding that:

1) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

2) Reached its final disposition during the most recent five-year period; and

3) If one of the following:

a) A criminal proceeding that resulted in a conviction, as defined in paragraph 5 of this award term and condition;

b) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

Page 10

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

c) An administrative proceeding, as defined in paragraph 5 of this award term and condition, that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

d) Any other criminal, civil, or administrative proceeding if:

(1) It could have led to an outcome described in paragraph 2.c.(1), (2), or (3) of this award term and condition;

(2) It had a different disposition arrived at by consent or compromise with an acknowledgement of fault on your part; and

(3) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.

C. Reporting Procedures

Enter in the SAM Entity Management area the information that SAM requires about each proceeding described in paragraph B of this award term and condition. You do not need to submit the information a second time under assistance awards that you received if you already provided the information through SAM because you were required to do so under Federal procurement contracts that you were awarded.

D. Reporting Frequency

During any period of time when you are subject to this requirement in paragraph A of this award term and condition, you must report proceedings information through SAM for the most recent five year period, either to report new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. Recipients that have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000 must disclose semiannually any information about the criminal, civil, and administrative proceedings.

E. Definitions

For purposes of this award term and condition:

1) Administrative proceeding means a non-judicial process that is adjudicatory in nature in order to make a determination of fault or liability (e.g., Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

2) Conviction, for purposes of this award term and condition, means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere.

3) Total value of currently active grants, cooperative agreements, and procurement contracts includes—

a) Only the Federal share of the funding under any Federal award with a recipient cost share or match; and

Page 11

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

b) The value of all expected funding increments under a Federal award and options, even if not yet exercised.

F. Disclosure Requirements.

Consistent with 45 C.F.R. § 75.113, applicants and recipients must disclose, in a timely manner, in writing to the HHS Awarding Agency, with a copy to the HHS Office of the Inspector General, all information related to violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS Office of the Inspector General all information related to violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

*HHS OASH Grants and Acquisitions Management*
*1101 Wootton Parkway, Plaza Level*
*Rockville, MD 20852*

AND

*US Department of Health and Human Services Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS—MANDATORY GRANT DISCLOSURES*
*PO Box 23489*
*Washington, DC 20026*

URL: http://oig.hhs.gov/fraud/report-fraud/index.asp

(Include "Mandatory Grant Disclosures" in subject line)

**Fax:** 1-800-223-8164 (Include "Mandatory Grant Disclosures" in subject line)

Failure to make required disclosures can result in any of the remedies described in 45 C.F.R. § 75.371 ("Remedies for noncompliance"), including suspension or debarment (See also 2 C.F.R. Parts 180 & 376 and 31 U.S.C. § 3321).

The recipient must include this mandatory disclosure requirement in all subawards and contracts under this award.

9. **Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.** You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

-- You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

-- For information on your specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see* http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

-- HHS funded health and education programs must be administered in an environment free of sexual harassment, *see*

Page 12

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

-- For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

10. **Trafficking in Persons.** This award is subject to the requirements of Section 106 (g) of the Trafficking Victims Protection Act of 2000, as amended (22 U.S.C. § 7104)

A. Provisions applicable to a recipient that is a private entity.

1) You as the recipient, your employees, subrecipients under this award, and subrecipients' employees may not

a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect;

b) Procure a commercial sex act during the period of time that the award is in effect; or

c) Use forced labor in the performance of the award or subawards under the award.

2) We as the Federal awarding agency may unilaterally terminate this award, without penalty, if you or a subrecipient that is a private entity –

a) Is determined to have violated a prohibition in paragraph A.1 of this award term; or

b) Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph A.1 of this award term through conduct that is either-

(1) Associated with performance under this award; or

(2) Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

B. Provision applicable to a recipient other than a private entity.

We as the Federal awarding agency may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity-

1) Is determined to have violated an applicable prohibition in paragraph a.1 of this award term; or

2) Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph a.1 of this award term through conduct that is either

a) Associated with performance under this award; or

b) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an

Page 13

**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

organization that are provided in 2 C.F.R. Part 180, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," as implemented by our agency at 2 C.F.R. Part 376.

C. Provisions applicable to any recipient.

1) You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph A.1 of this award term

2) Our right to terminate unilaterally that is described in paragraph A.2 or B of this section:

a) Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. § 7104(g)), and

b) Is in addition to all other remedies for noncompliance that are available to us under this award.

3) You must include the requirements of paragraph A.1 of this award term in any subaward you make to a private entity.

D. Definitions. For purposes of this award term:

1) "Employee" means either:

a) An individual employed by you or a subrecipient who is engaged in the performance of the project or program under this award; or

b) Another person engaged in the performance of the project or program under this award and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.

2) "Forced labor" means:

Labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

3) "Private entity":

a) Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 C.F.R. § 175.25.

b) Includes:

(1) A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 C.F.R. § 175.25(b).

(2) A for-profit organization.

Page 14

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

4) "Severe forms of trafficking in persons," "commercial sex act," and "coercion"

These terms have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. § 7102)

11. **Prohibition on certain telecommunications and video surveillance services or equipment.**

A. As described in CFR 200.216, recipients and subrecipients are prohibited to obligate or spend grant funds (to include direct and indirect expenditures as well as cost share and program) to:

1) Procure or obtain,

2) Extend or renew a contract to procure or obtain; or

3) Enter into contract (or extend or renew contract) to procure or obtain equipment, services, or systems that use covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system. As described in Pub. L. 115-232, section 889, covered telecommunications equipment is telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities).

a) For the purpose of public safety, security of government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities).

b) Telecommunications or video surveillance services provided by such entities or using such equipment.

c) Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise, connected to the government of a covered foreign country.

## REPORTING REQUIREMENTS

1. **Financial Reporting Requirement—Federal Financial Report (FFR) SF 425.** Effective October 1, 2020, you must submit your SF-425 to OASH using the Department of Health and Human Services (HHS) Payment Management System for any OASH awards with a project period ending October 1, 2020 or later. Failure to submit the FFR in the correct system by the due date may delay processing of any pending requests or applications.

OASH and the Program Support Center are collaborating in the submission of the SF-425 to reduce the burden on grantees and assist with the reconciliation of expenditures and disbursements, and to allow for timely closeout of grants. Your submission must be through the HHS Payment Management System. SF-425 submissions through Grant Solutions will no longer be accepted for OASH awards.

You must use the SF-425 Federal Financial Report (FFR) for expenditure reporting. To assist in your preparation for submission you may find the SF-425 and instructions for completing the form on the Web at: http://apply07.grants.gov/apply/forms/sample/SF425-V1.0.pdf. You must complete **all** sections of the FFR.

Page 15

DEPARTMENT OF HEALTH AND HUMAN SERVICES Notice of Award
Office of the Secretary
Award# 1 FPHPA006507-01-00
FAIN# FPHPA006507
Federal Award Date: 03/23/2022

**A. Quarterly FFR Due Date.**

Your FFR is due 30 days after the end of each Quarter in the federal fiscal year. That is for the:

**Quarter ending September 30, your FFR is due October 30**

**Quarter ending December 31, your FFR is due January 30**

**Quarter ending March 30, your FFR is due April 30**

**Quarter ending June 30, your FFR is due July 30.**

**B. Final FFR Due Date.**

Your final FFR covering the entire project is due 90 days after the end date for your project period.

**C. Past due reports.**

If you have not submitted by the due date, you will receive a message indicating the report is **Past Due**. Please ensure your Payment Management System account and contact information are up to date so you receive notifications.

**D. Electronic Submission.**

Electronic Submissions are accepted only via the HHS Payment Management System – No other submission methods will be accepted without prior written approval from the GMO. You must be assigned to the grant with authorized access to the FFR reporting Module when submitting. If you encounter any difficulties, contact the HHS Payment Management System Help Desk or your assigned Grants Management Specialist. Please reference the CONTACTS section of NoA Terms and Conditions to locate the name of your assigned Grants Management Specialist.

2. **Annual Progress Report Requirements.** You must submit annual progress reports 90 days after the end of each performance reporting period unless otherwise required under the Special Terms and Requirements for this award. Your progress reports must address content required by 45 CFR § 75.342(b)(2). Additonal progess reporting may be requiremented under Special Terms and Requirements as required by statute, regulation, or specific circumstances warranting additional monitoring. Additional guidance may be provided by the Program Office. Reports must be submitted electronically via upload to Grant Notes in GrantSolutions.

3. **Audit Requirements.** The Single Audit Act Amendments of 1996 (31 U.S.C. §§ 7501-7507) combined the audit requirements for all entities under one Act. An audit is required for all non-Federal entities expending Federal awards, and must be consistent with the standards set out at 45 CFR Part 75, Subpart F ("Audit Requirements"). The audits are due within 30 days of receipt from the auditor or within 9 months of the end of the fiscal year, whichever occurs first. The audit report when completed should be submitted online to the Federal Audit Clearinghouse at https://harvester.census.gov/facides/Account/Login.aspx.

## CONTACTS

1. **Fraud, Waste, and Abuse.** The HHS Inspector General accepts tips and complaints from all sources about potential fraud, waste, abuse, and mismanagement in Department of Health and Human Services' programs. Your information will be reviewed promptly by a professional staff member. Due to the high volume of information that they receive, they are unable to reply to submissions. You may reach the OIG through various channels.

Page 16

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**   Notice of Award

Office of the Secretary

Award#  1 FPHPA006507-01-00
FAIN#   FPHPA006507
Federal Award Date:  03/23/2022

Internet: https://forms.oig.hhs.gov/hotlineoperations/index.aspx

Phone: 1-800-HHS-TIPS (1-800-447-8477)

*Mail: US Department of Health and Human Services*
*Office of Inspector General*
*ATTN: OIG HOTLINE OPERATIONS*
*PO Box 23489*
*Washington, DC 20026*

For additional information visit https://oig.hhs.gov/fraud/report-fraud/index.asp

2. **Payment Procedures.** Payments for grants awarded by OASH Program Offices are made through Payment Management Services (previously known as the Division of Payment Management) https://pms.psc.gov/home.html  PMS is administered by the Program Support Center (PSC), HHS. NOTE: Please contact the Payment Management Services to establish an account if you do not have one.

   Inquiries regarding payments should be directed to https://pms.psc.gov/home.html; or

   Payment Management Services, P.O. Box 6021, Rockville, MD 20852;

   or 1-877-614-5533.

3. **Use of Grant Solutions.** GrantSolutions is our web-based system that will be used to manage your grant throughout its life cycle. Please contact GrantSolutions User Support to establish an account if you do not have one. Your Grants Management Specialist has the ability to create a GrantSolutions account for the Grantee Authorized Official and Principle Investigator/Program Director roles. Financial Officer accounts may only be established by GrantSolutions staff. All account requests must be signed by the prospective user and their supervisor or other authorized organization official.

   For assistance on GrantSolutions issues please contact: GrantSolutions User Support at 202-401-5282 or 866-577-0771, email help@grantsolutions.gov, Monday – Friday, 8 a.m. – 6 p.m. ET. Frequently Asked Questions and answers are available at https://grantsolutions.secure.force.com/.

4. **Grants Administration Assistance.** For assistance on **grants administration** issues please contact: Jessica Shields, Grants Management Specialist, at (240) 453-8839, or e-mail jessica.shields@hhs.gov or mail:

   *OASH Grants and Acquisitions Management Division*
   *Department of Health and Human Services*
   *Office of the Secretary*
   *Office of the Assistant Secretary for Health*
   *1101 Wootton Parkway, Rockville, MD 20852.*



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 6 FPHPA006507-01-01
FAIN# FPHPA006507
Federal Award Date: 06/07/2022

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

**Federal Agency Information**
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10.Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
6 FPHPA006507-01-01

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Budget Revision

**18. Is the Award R&D?**
No

## Summary Federal Award Financial Information

**19. Budget Period Start Date** 04/01/2022 **- End Date** 03/31/2023

| | |
|---|---|
| **20. Total Amount of Federal Funds Obligated by this Action** | $0.00 |
| 20a. Direct Cost Amount | ($2,210.00) |
| 20b. Indirect Cost Amount | $2,210.00 |
| 21. Authorized Carryover | $0.00 |
| 22. Offset | $0.00 |
| 23. Total Amount of Federal Funds Obligated this budget period | $4,500,000.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $9,077,970.00 |

**26. Period of Perfomance Start Date** 04/01/2022 **- End Date** 03/31/2027

27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance — Not Available

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action approves the budget revision, please see revised line items. All prior terms and conditions remain in effect unless specifically removed.



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 6 FPHPA006507-01-01
FAIN# FPHPA006507
Federal Award Date: 06/07/2022

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406

**Congressional District of Recipient**
05

**Payment Account Number and Type**
1736017987C4

**Employer Identification Number (EIN) Data**
736017987

**Universal Numbering System (DUNS)**
143673015

**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**31. Assistance Type**
Project Grant

**32. Type of Award**
Service

## 33. Approved Budget
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| **a. Salaries and Wages** | $3,761,973.00 |
| **b. Fringe Benefits** | $1,970,211.00 |
| **c. Total Personnel Costs** | $5,732,184.00 |
| **d. Equipment** | $0.00 |
| **e. Supplies** | $1,301,994.00 |
| **f. Travel** | $30,183.00 |
| **g. Construction** | $0.00 |
| **h. Other** | $301,823.00 |
| **i. Contractual** | $1,444,655.00 |
| **j. TOTAL DIRECT COSTS** | $8,810,839.00 |
| **k. INDIRECT COSTS** | $267,131.00 |
| **l. TOTAL APPROVED BUDGET** | $9,077,970.00 |
| **m. Federal Share** | $4,500,000.00 |
| **n. Non-Federal Share** | $4,577,970.00 |

## 34. Accounting Classification Codes

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 2-3984521 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-22-0359 |



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

# Notice of Award

Award# 5 FPHPA006507-02-00
FAIN# FPHPA006507
Federal Award Date: 03/30/2023

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

**Federal Agency Information**
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10.Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
5 FPHPA006507-02-00

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Non-Competing Continuation

**18. Is the Award R&D?**
No

## Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 04/01/2023 **- End Date** 03/31/2024 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $4,500,000.00 |
| 20a. Direct Cost Amount | $8,793,850.00 |
| 20b. Indirect Cost Amount | $284,120.00 |
| 21. Authorized Carryover | $0.00 |
| 22. Offset | $0.00 |
| 23. Total Amount of Federal Funds Obligated this budget period | $0.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $9,077,970.00 |
| **26. Period of Perfomance Start Date** 04/01/2022 **- End Date** 03/31/2027 | |
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action authorizes a total approved budget of $9,077,970.00 for a continuation award that includes $4,500,000.00 in FY2023 funding, an offset of $0, and a carryover of $0.



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 5 FPHPA006507-02-00
FAIN# FPHPA006507
Federal Award Date: 03/30/2023

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**Congressional District of Recipient**
05

**Payment Account Number and Type**
1736017987C4

**Employer Identification Number (EIN) Data**
736017987

**Universal Numbering System (DUNS)**
143673015

**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**31. Assistance Type**
Project Grant

**32. Type of Award**
Service

**33. Approved Budget**
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| | |
|---|---|
| a. Salaries and Wages | $3,631,462.00 |
| b. Fringe Benefits | $1,997,305.00 |
| c. Total Personnel Costs | $5,628,767.00 |
| d. Equipment | $0.00 |
| e. Supplies | $1,302,726.00 |
| f. Travel | $66,000.00 |
| g. Construction | $0.00 |
| h. Other | $269,683.00 |
| i. Contractual | $1,526,674.00 |
| j. TOTAL DIRECT COSTS | $8,793,850.00 |
| k. INDIRECT COSTS | $284,120.00 |
| l. TOTAL APPROVED BUDGET | $9,077,970.00 |
| m. Federal Share | $4,500,000.00 |
| n. Non-Federal Share | $4,577,970.00 |

**34. Accounting Classification Codes**

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $4,500,000.00 | 75-23-0359 |



**DEPARTMENT OF HEALTH AND HUMAN SERVICES** Notice of Award

Office of the Secretary

Award# 5 FPHPA006507-02-00
FAIN# FPHPA006507
Federal Award Date: 03/30/2023

**35. Terms And Conditions**

## SPECIAL TERMS AND REQUIREMENTS

1. **Prior Terms, Conditions, and Requirements.** Unless specifically removed, all prior terms, conditions, and requirements under this award remain in effect.



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 6 FPHPA006507-02-01
FAIN# FPHPA006507
Federal Award Date: 04/20/2023

## Recipient Information

**1. Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**2. Congressional District of Recipient**
05

**3. Payment System Identifier (ID)**
1736017987C4

**4. Employer Identification Number (EIN)**
736017987

**5. Data Universal Numbering System (DUNS)**
143673015

**6. Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**7. Project Director or Principal Investigator**
JILL NOBLES-BOTKIN
jill@health.ok.gov
405-271-4476

**8. Authorized Official**
Ms. Bethany J Ledel
Grants Reporting Officer
bethanyl@health.ok.gov
405-271-4042

**Federal Agency Information**
OASH Grants and Acquisitions Management Division

**9. Awarding Agency Contact Information**
Mrs. Jessica Hall-Shields
Grants Specialist
Jessica.Shields@hhs.gov
240-453-8839

**10. Program Official Contact Information**
Cynda Hall
Public Health Advisor
cynda.hall@hhs.gov
2404532850

## Federal Award Information

**11. Award Number**
6 FPHPA006507-02-01

**12. Unique Federal Award Identification Number (FAIN)**
FPHPA006507

**13. Statutory Authority**
Title X of the Public Health Service Act, Section 1001 (42 U.S.C. § 300)

**14. Federal Award Project Title**
Oklahoma State Department of Health Family Planning Services Project

**15. Assistance Listing Number**
93.217

**16. Assistance Listing Program Title**
Family Planning Services

**17. Award Action Type**
Change in Scope with or without Budget Revision

**18. Is the Award R&D?**
No

## Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 04/01/2023 **- End Date** 03/31/2024 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $0.00 |
| 20a. Direct Cost Amount | $0.00 |
| 20b. Indirect Cost Amount | $0.00 |
| 21. Authorized Carryover | $0.00 |
| 22. Offset | $0.00 |
| 23. Total Amount of Federal Funds Obligated this budget period | $4,500,000.00 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $4,577,970.00 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $9,077,970.00 |
| **26. Period of Perfomance Start Date** 04/01/2022 **- End Date** 03/31/2027 | |
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Period of Performance | $18,155,940.00 |

**28. Authorized Treatment of Program Income**
OTHER (See REMARKS)

**29. Grants Management Officer – Signature**
Dr. Scott Moore
OASH Grants Management Officer

## 30. Remarks

This action approves the change in scope due to the closing of brick and mortar location due to current building being in need of repair. All prior terms and conditons remain in effect unless specifically removed.



DEPARTMENT OF HEALTH AND HUMAN SERVICES
Office of the Secretary

Notice of Award

Award# 6 FPHPA006507-02-01
FAIN# FPHPA006507
Federal Award Date: 04/20/2023

## Recipient Information

**Recipient Name**
Health Department, Oklahoma State
123 Robert S Kerr Ave
0308
Oklahoma State Department of Health
Oklahoma City, OK 73102-6406
405 426-8099

**Congressional District of Recipient**
05

**Payment Account Number and Type**
1736017987C4

**Employer Identification Number (EIN) Data**
736017987

**Universal Numbering System (DUNS)**
143673015

**Recipient's Unique Entity Identifier (UEI)**
LFU8Z8MPLTG3

**31. Assistance Type**
Project Grant

**32. Type of Award**
Service

**33. Approved Budget**
(Excludes Direct Assistance)

I. Financial Assistance from the Federal Awarding Agency Only
II. Total project costs including grant funds and all other financial participation

| Item | Amount |
|---|---|
| a. Salaries and Wages | $3,631,462.00 |
| b. Fringe Benefits | $1,997,305.00 |
| c. Total Personnel Costs | $5,628,767.00 |
| d. Equipment | $0.00 |
| e. Supplies | $1,302,726.00 |
| f. Travel | $66,000.00 |
| g. Construction | $0.00 |
| h. Other | $269,683.00 |
| i. Contractual | $1,526,674.00 |
| j. TOTAL DIRECT COSTS | $8,793,850.00 |
| k. INDIRECT COSTS | $284,120.00 |
| l. TOTAL APPROVED BUDGET | $9,077,970.00 |
| m. Federal Share | $4,500,000.00 |
| n. Non-Federal Share | $4,577,970.00 |

**34. Accounting Classification Codes**

| FY-ACCOUNT NO. | DOCUMENT NO. | ADMINISTRATIVE CODE | OBJECT CLASS | CFDA NO. | AMT ACTION FINANCIAL ASSISTANCE | APPROPRIATION |
|---|---|---|---|---|---|---|
| 3-3980663 | FPHPA6507A | FPH70 | 41.51 | 93.217 | $0.00 | 75-23-0359 |



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**            Office of the Secretary

Office of the Assistant Secretary for Health
Office of Population Affairs
Washington, D.C.
20201

May 24, 2023

Jill Nobles-Botkin, APRN-CNM, MSN
Administrative Programs Manager
Perinatal and Reproductive Health Division
Maternal & Child Health Services
Oklahoma State Department of Health
123 Robert S. Kerr Avenue 0308
Oklahoma City, OK 73102-6406

Dear Ms. Nobles-Botkin,

As you know, the Office of Population Affairs (OPA) has been corresponding with the Oklahoma State Department of Health (OSDH) since last summer with respect to its policy and procedure for providing nondirective options counseling and referral within its Title X project (FPHPA006507), in accordance with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5). As a brief recap, on August 29, 2022, because of recent changes in Oklahoma state laws, OSDH submitted a proposal to change its policy and procedure for providing nondirective options counseling by providing clients seeking counseling on pregnancy termination with a link to the HHS OPA website. On November 9, 2022, OPA informed OSDH that this proposal did not comply with the Title X regulatory requirements set out in 42 CFR § 59.5(a)(5)(ii) and, therefore, could not be approved. On November 22, 2022, OSDH submitted to OPA a request for reconsideration of OPA's November 9, 2022 decision. On January 25, 2023, OPA posted a letter to OSDH on GrantSolutions. That letter reiterated that the proposal to provide clients seeking counseling on pregnancy termination with a link to the HHS OPA website does not comply with the 2021 Title X implementing regulations at 42 CFR § 59.5(a)(5)(ii). The letter also informed OSDH that it could submit an alternate compliance proposal that included providing clients with a referral to another entity, such as the All-Options Talkline. OSDH informed OPA that it became aware of this letter on February 7, 2023, when contacted by email.

On February 16, 2023, OSDH responded to OPA's January 25, 2023, letter by submitting an alternative proposal for compliance, which included providing nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line. On March 14, 2023, OSDH submitted a "Pregnancy Diagnosis and Counseling" policy (revised March 2023), which indicated that the protocol for counseling clients with a positive pregnancy test includes:

> b. Provide neutral, factual information and nondirective counseling on all pregnancy options by OSDH staff or through the All-Options Talk Line (1-888-493-0092) and website, https://www.all-options.org/find-support/talkline/ (except for options the client indicated she does not want more information on).

In addition, as a corollary to the counseling protocol, OSDH's "Pregnancy Diagnosis and Counseling" policy (revised March 2023) indicated that one of the options for referral was to the "All-Options Talk Line (1-888-493-0092)." As part of its March 14 submission, OSDH also sent a Pregnancy Choices brochure (dated March 2023), listing the All-Options Talk Line as one of the Oklahoma Family Planning Resources.

On March 21, 2023, OSDH submitted a written assurance of compliance with the options counseling and referral requirements in the 2021 Title X Final Rule. On March 23, 2023, OPA posted two documents on GrantSolutions (a letter dated March 1, 2023, and a printout of a Technical Review, Exported On: 03/20/2023). Those documents informed OSDH that OPA had determined that OSDH's policy complied with the Title X regulations.

Most recently, however, on May 5, 2023, OSDH notified OPA by email that it "had a change required in our family planning program policy effective late afternoon of 4/27/23." As documentation, OSDH submitted the same exact "Pregnancy Diagnosis and Counseling" policy (revised March 2023) as it originally submitted on March 14, 2023, but the new version no longer includes counseling through and referral to the All-Options Talk Line. Specifically, the policy submitted on May 5, 2023, replaced part b. quoted above with the following:

> b. Provide neutral, factual information and nondirective counseling on pregnancy options in Oklahoma by OSDH staff (except for options the client indicated she does not want more information on).

In addition, the updated OSDH "Pregnancy Diagnosis and Counseling" policy (revised March 2023) no longer includes the All-Options Talk Line as an entity to which clients may be referred. And, as part of its May 5, 2023, submission, OSDH also included an updated Pregnancy Choices brochure, which no longer lists the All-Options Talk Line as a resource.

OSDH's reference to counseling on "pregnancy options in Oklahoma" in the "Pregnancy Diagnosis and Counseling" policy, rather than counseling on all pregnancy options, and the deletion of referral to the All-Options Talk Line in this policy without any other provision for abortion referrals, are not acceptable revisions, as Title X recipients must still follow all Federal regulatory requirements. The changes to OSDH's family planning program policy do not suffice or meet Federal requirements because Oklahoma law does not extend to all pregnancy options (*See* Okla. Stat. tit. 21, § 861), and we understand that, pursuant to OSDH's revised policy, information, counseling and referral will not be available for all alternative courses of action, but only for those options available under Oklahoma state law. This is inconsistent with Title X regulations at 42 CFR § 59.5(a)(5), which require Title X projects to provide information and nondirective counseling on a range of options, including prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. Additionally, projects are required to provide referrals upon client request, including referrals for abortion. In some circumstances, those referrals will need to be made out of state.

Thus, based upon the documentation provided, OPA has determined that OSDH's policy for providing nondirective options counseling and referral within your Title X project does not comply with the Title X regulatory requirements and, therefore, the terms and conditions of your grant. Given OSDH's failure to adhere to the Title X regulatory requirements for nondirective options counseling and referral, I have referred this matter to the HHS Office of the Assistant Secretary for Health's Grants and Acquisitions Management (GAM) Division as a violation of the terms and conditions of your grant. I have copied the Director of OASH GAM on this correspondence as notification of the compliance violation and will be in touch with a response.

Thanks,

Jessica S. Marcella

Jessica Swafford Marcella
Deputy Assistant Secretary for Population Affairs
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Office of Population Affairs

cc: Scott Moore
Director/Chief Grants Management Officer
U.S. Department of Health and Human Services
Office of the Assistant Secretary for Health, Grants and Acquisitions Management



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

Office of the Assistant Secretary for Health
Grants & Acquisitions Management
Rockville, MD 20852

May 25, 2023

TO:        Jill Nobles-Botkin (jill@health.ok.gov)
           Project Director/Principle Investigator

           Ms. Bethany J Ledel (bethanyl@health.ok.gov)
           Authorized Official

           Oklahoma State Health Department
           123 Robert S Kerr Ave 0308
           Oklahoma City, OK 73102-6406

RE:        Suspension of Award FPHPA006507 "Oklahoma State Department of Health
           Family Planning Services Project"

The Office of Population Affairs (OPA) has provided notice in the attached letter that your
award FPHPA006507 "Oklahoma State Department of Health Family Planning Services Project"
is out of compliance with the Title X regulation (42 CFR Part 59, Subpart A) as of May 24,
2023.

As a condition of accepting the award (Notice of Award, Special Terms and Requirements 2),
Oklahoma State Department of Health (OSDH) stipulated "that the award and any activities
thereunder are subject to all provisions of 42 CFR Part 59, Subpart A." OSDH accepted the
award per Standard Term 1 of the Notice of Award, "By drawing or otherwise obtaining funds
for the award from the grant payment system or office, you accept the terms and conditions of
the award and agree to perform in accordance with the requirements of the award."

OSDH accepted the award on May 24, 2022, by drawing down funds from the HHS Payment
Management System (PMS). In doing so, OSDH agreed to comply with the Title X regulation as
a condition of the award.

Therefore, I conclude that because OSDH is out of compliance with the Title X regulation,
OSDH is also out of compliance with the terms and conditions of award FPHPA006507. As of
April 27, 2023 (i.e., the effective date of the non-compliant OSDH policy), all costs are
unallowable.

Consequently, I am suspending award FPHPA006507 and all activities supported by it effective
with the date of this letter. I will review this action in 30 days to reassess OSDH's compliance
with the award terms and conditions. The suspension may be extended for an appropriate time or
the award may be terminated pursuant to 45 CFR § 75.372(a)(1) for material noncompliance or
unsatisfactory performance with the terms and conditions of the award. A termination under this
section must be reported to the Office of Management and Budget-designated integrity and

performance system, currently the Federal Awardee Performance and Integrity Information System (FAPIIS). See 45 CFR § 75.372(b). Inclusion in FAPIIS may affect your ability to obtain future Federal funding.

As an alternative, you have the opportunity to voluntarily relinquish your grant and may do so by contacting the assigned Grants Management Specialist (Jessica Shields, Jessica.shields@hhs.gov), who can provide your additional information on the process. Note that as compared to termination, a decision to relinquish your award is not reported to FAPIIS.

Respectfully,

Scott J. Moore -S
2023.05.25 11:09:13 -04'00'

Scott J. Moore, Ph.D., J.D.
Director / Chief Grants Management Officer
OASH Grants & Acquisitions Management

cc:   Jessica Shields, Grants Management Specialist
      Cynda Hall, OPA Project Officer
      Duane Barlow, OASH Grants Branch chief
      Amy Margolis, OPA Deputy Director
      Jessica Marcella, Deputy Assistant Secretary for Population Affairs

 # Grants Certifications Report

**Certification for:** OKLAHOMA STATE DEPARTMENT OF HEALTH
**Unique Entity ID:** LFU8Z8MPLTG3
**Certification Validity From:** Tue Jun 13 15:08:04 EDT 2023
**Certification Validity To:** Wed Jun 12 15:08:04 EDT 2024

**Financial Assistance General Certifications and Representations**

As the duly authorized representative of the **OKLAHOMA STATE DEPARTMENT OF HEALTH**, I certify that **OKLAHOMA STATE DEPARTMENT OF HEALTH**:

(1) Has the legal authority to apply for Federal assistance and the institutional, managerial and financial capability to ensure proper planning, management and completion of any financial assistance project covered by this Certifications and Representations document (See 2 C.F.R. § 200.113 Mandatory disclosures, 2 C.F.R. § 200.214 Suspension and debarment, OMB Guidance A- 129, "Policies for Federal Credit Programs and Non-Tax Receivables");

(2) Will give the awarding agency, the Comptroller General of the United States and, if appropriate, the State, through any authorized representative, access to and the right to examine all records, books, papers, or documents related to the award; and will establish a proper accounting system in accordance with generally accepted accounting standards or agency directives (See 2 C.F.R. § 200.302 Financial Management and 2 C.F.R. § 200.303 Internal controls);

(3) Will disclose in writing any potential conflict of interest to the Federal awarding agency or pass through entity in accordance with applicable Federal awarding agency policy (See 2 C.F.R. § 200.112 Conflict of interest);

(4) Will comply with all limitations imposed by annual appropriations acts;

(5) Will comply with the U.S. Constitution, all Federal laws, and relevant Executive guidance in promoting the freedom of speech and religious liberty in the administration of federally-funded programs (See 2 C.F.R. § 200.300 Statutory and national policy requirements and 2 C.F.R. § 200.303 Internal controls);

(6) Will comply with all applicable requirements of all other Federal laws, executive orders, regulations, and public policies governing financial assistance awards and any Federal financial assistance project covered by this certification document, including but not limited to:

(a) Trafficking Victims Protection Act (TVPA) of 2000, as amended, 22 U.S.C. § 7104(g);

(b) Drug Free Workplace, 41 U.S.C. § 8103;

(c) Protection from Reprisal of Disclosure of Certain Information, 41 U.S.C. § 4712;

(d) National Environmental Policy Act of 1969, as amended, 42 U.S.C. § 4321 et seq.;

(e) Universal Identifier and System for Award Management, 2 C.F.R part 25;

(f) Reporting Subaward and Executive Compensation Information, 2 C.F.R. part 170;

(g) OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Non-procurement), 2 C.F.R. part 180;

(h) Civil Actions for False Claims Act, 31 U.S.C. § 3730;

(i) False Claims Act, 31 U.S.C. § 3729, 18 U.S.C. §§ 287 and 1001;

(j) Program Fraud and Civil Remedies Act, 31 U.S.C. § 3801 et seq.;

(k) Lobbying Disclosure Act of 1995, 2 U.S.C. § 1601 et seq.;

(l) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.;

(m) Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq.;

(n) Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 et seq.;

(o) Section 504 of the Rehabilitation Act of 1973, as amended, 42 U.S.C. § 794; and.

(p) Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6101 et seq.

✓ I have read each of the certifications and representations presented on this page. By submitting this certification, I, **Bethany Ledel**, am attesting to the accuracy of the certifications and representations contained herein. I understand that I may be subject to criminal prosecution under Section 1001, Title 18 of the United States Code or civil liability under the False Claims Act if I misrepresent **OKLAHOMA STATE DEPARTMENT OF HEALTH** by providing false, fictitious, or fraudulent information to the U.S. Government.